UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

J&B BOAT RENTAL, LLC

VERSUS

JAG CONSTRUCTION SERVICES,
INC., WESTERN SURETY COMPANY,
AND LARRY DOIRON, INC.

CIVIL ACTION

NO: 12-323

SECTION: "S" (4)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that J&B Boat Rental, LLC's Motion for Summary Judgment (Doc. #32) is **DENIED**.

**IT IS FURTHER ORDERED** that Larry Doiron, Inc. and Western Surety Company's Moiton for Summary Judgment (Doc. #33) is **DENIED**.

## BACKGROUND

This matter is before the court on a motion to for summary judgment filed by plaintiff, J&B Boat Rental, LLC. J&B argues that it is entitled to summary judgment because its claim against defendants, Larry Doiron, Inc. ("LDI") and Western Surety Company, satisfies the requirements of the Miller Act, 40 U.S.C. § 3131, et seq. LDI and Western Surety filed a cross-motion for summary judgment arguing that J&B should be precluded from maintaining this action because it pursued its claims against former co-defendant, JAG Construction Services, in the context of JAG's bankruptcy proceeding.

On August 18, 2010, the Terrebonne Levee and Conservation District awarded defendant LDI a contract in the amount of $7,874,884, pursuant to which LDI agreed to provide services and equipment for the hurricane protection interim flood risk reduction project for the "Morganza to the Gulf of Mexico." The project was funded by the federal government, and, pursuant to the Miller

Act, LDI obtained a payment bond from Western Surety, for the contract amount. LDI and JAG entered into a subcontract whereby JAG agreed to perform a portion of the work under the contract. JAG's work required the use of self-propelled vessels to move barges. JAG initially had an oral vessel lease contract with a company that is not a party to this action. That non-party ceased providing services to JAG, and has been compensated.

After JAG's contract with the non-party ended, J&B contacted JAG and offered to provide the vessels for the remainder of JAG's work on the project. JAG and J&B entered into an oral contract whereby J&B agreed to provide services and equipment to JAG for the project. On June 6, 2011, and August 3, 2011, J&B sent invoices to JAG seeking a total of $66,300 for its services and equipment. J&B claimed that the rental price for the vessels was $300 per hour "around the clock," or $7,200 per day. JAG refused to pay the invoices, contending that the rental price to which it agreed was $2,000 per day. On September 23, 2011, J&B provided notice of its claim to the defendants pursuant to the Miller Act. Thereafter, J&B filed this lawsuit seeking payment of $66,300, for labor and materials which were furnished or supplied to JAG in connection with the Terrebonne Levee and Conservation District's hurricane protection interim flood risk reduction project for the "Morganza to the Gulf of Mexico."

On April 25, 2012, the defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that J&B's suit should be dismissed because it failed to state a claim upon which relief can be granted. Specifically, the defendants argued that J&B did not properly allege a breach of contract claim because it failed to allege that JAG and J&B agreed upon the price of $300 per hour "around the clock." The court denied the motion finding that J&B's

complaint conforms with Rule 8(a)(3) and the Miller Act by clearly putting the defendants on notice of the claim and stating the amount claimed, for whom the work was done and on which project.

Thereafter, JAG filed for bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana. On September 24, 2012, this action was closed for statistical purposes due to JAG's bankruptcy proceedings.

J&B filed a Notice of Claim in JAG's bankruptcy seeking $66,300.00 for the work it performed on the project. JAG objected to the amount of the claim.

On April 9, 2013, the bankruptcy court held an evidentiary hearing on JAG's objection to J&B's claim. On July 16, 2013, the bankruptcy judge issued a Memorandum Ruling holding that J&B and JAG "entered into an agreement for the rental of a tugboat and that J&B performed that agreement by providing a tug boat and crew from May 12, 2011, through July 28, 2011." In re JAG Constr. Servs., Inc., 2013 WL 3760113, *2 (Bkrtcy. W.D. La. 7/16/2013). The court found that the value of the work performed by J&B was $48,046.86, which included an industry daily rate of $2,200 for the tug and crew and $500 daily rate for an additional captain for 13 days; $12,840 for fuel and lube; and, $106.86 for groceries. On September 22, 2014, the bankruptcy court issued its Final Decree Order in JAG's bankruptcy, and J&B was paid $3,661.17 as an unsecured creditor, leaving a balance of $44,385.69.

On November 17, 2014, this court granted J&B's motion to lift the stay, reopened this action, and dismissed with prejudice J&B's claims against JAG. On March 30, 2015, J&B filed the instant motion for summary judgment arguing that the bankruptcy court's judgment establishes the existence of an oral contract between it and JAG, and the value of the services J&B provided under that contract. J&B contends that, because its claims have been established and it received only $3,661.17

from JAG, under the Miller Act, it is entitled to recover the remaining amount, $44,385.69, plus prejudgment interest, costs and post-judgment interest, from LDI and Western Surety.

LDI and Western Surety argue that summary judgment in favor of J&B is inappropriate because they were not parties to the bankruptcy proceeding and did not have the opportunity to assert any defenses to J&B's claim. They argue that J&B should have brought its claims as an adversary proceeding in the bankruptcy court that included not just JAG, but also LDI and Western Surety because they were necessary parties to the claim. LDI and Western Surety contend that J&B does not have any cause of action against them under the Miller Act because JAG was discharged in bankruptcy, paid a portion of J&B's claim and was dismissed with prejudice from this suit. LDI and Western Surety contend that summary judgment in their favor finding that J&B cannot recover from them is appropriate.

## ANALYSIS

### A.     **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing

4

substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    Miller Act**

Under the Miller Act, a contractor that is awarded a contract of more than $100,000 for the construction, alteration, or repair of any public work of the United States must provide a payment bond to the government for the protection of all persons supplying labor or materials in the prosecution of the contract work. 40 U.S.C. § 3131(b). It was enacted "to protect parties such as subcontractors or suppliers who work on federal projects as state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable." Arena v. Graybar Elct. Co., Inc., 669 F.3d 214, 220 (5th Cir. 2012). The Miller Act is "highly remedial in nature" and "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into pubic projects." Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co., 64 S.Ct. 890, 893 (1944).

5

The Miller Act describes the rights of persons furnishing labor or material for a contract funded by the federal government to bring a civil action:

> (1) In general. Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title [40 USCS § 1331] and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.
>
> (2) Persons having direct contractual relationship with a subcontractor. A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133(b).

The elements of a Miller Act claim are: (1) the plaintiff supplied materials in prosecution of the work provided for in the contract; (2) the plaintiff has not been paid; (3) the plaintiff had a good faith belief that the materials were intended for the specified work; and (4) the plaintiff meets the jurisdictional requisites of timely notice and filing. Jems Fabrication, Inc. v. Fid. & Deposit Co. of Md., 566 Fed. Appx. 298, (5th Cir. 2014) (citations omitted).

A Miller Act claim must be made on the general contractor's payment bond. See Arena, 669 F.3d at 220 (a "subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond"); J.D. Fields & Co., Inc. v. Gottfried Corp., 272 F.3d 692,

696 (5th Cir. 2001) (discussing the Miller Act right of action against "the general contractor's payment bond). Under the Miller Act, a subcontractor can sue on the payment bond by bringing a direct action against the surety without joining the contractor as a party defendant. U.S. ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967); see also United States v. Nucon Constr. Corp., 49 F.3d 1421, 1423 (9th Cir. 1995) ("All courts to consider the question have concluded that a surety alone may be sued by a subcontractor under the Miller Act . . . Federal law is clear. Under the express language of the Miller Act, a suit may be maintained by a subcontractor against the Miller Act surety without joining the general contractor.").

The Miller act provides a federal cause of action for which the "scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." F.D. Rich Co. v. U.S. for Use of Indust. Lumber Co., 94 S.Ct. 2157, 2164 (1974). "The liability of a Miller Act surety is controlled by federal law because 'determination of the extent of the liability involves the construction of a federal statute, the Miller Act, under which it was created.'" U.S. for the Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1206 (9th Cir. 2002) (quoting Cont'l Cas. Co. v. Schaefer, 173 F.2d 5, 8 (9th Cir. 1949)). Further, "[i]t is clear that 'the surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act if the bond is to have its intended effect." Id. (quoting United States ex rel. Sherman v. Carter, 77 S.Ct. 793, 796 (1957)). Thus, "[a]lthough general rules of suretyship law apply to Miller Act cases," the principles that conflict with the Miller Act's terms and purpose are inapplicable. Id. ("the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act").

7

### 1. LDI and Western Surety's Arguments

LDI and Western Surety argue that J&B is attempting to improperly enforce the bankruptcy judgment against them because they were not parties to that action and should have been. They contend that under the doctrine of claim preclusion, J&B is estopped from asserting its Miller Act claim against them. They also argue that under Louisiana law of suretyship, JAG's partial payment of J&B's claim extinguishes Western Surety's obligation.

#### a. Claim Preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008) (quoting New Hampshire v. Maine, 121 S.Ct 1808, 1814 (2001)). "One major function of claim preclusion is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4408, at 185 (2002). Federal law provides that a judgment precludes future actions on the basis of claim preclusion when: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and, (4) the same claim or cause of action was involved in both actions. Frank C. Minville LLC v. Atl. Refining Co., 337 Fed. Appx. 429, 435 (5th Cir. 2009) (citing Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005)). "[W]here the four elements of the res judicata test are met, we must also determine whether 'the previously unlitigated claim could or should have been brought in the earlier litigation." In re Paige, 610 F.3d 865, 870 (5th Cir. 2010) (quoting D-1 Enters., Inc. v. Commercial State Bank, 864 F.2d 36, 38 (5th Cir. 1989)).

Claim preclusion does not apply in this action. Here, J&B brings a Miller Act claim on the payment bond issued by Western Surety. The parties to this action are not the same as the parties in the bankruptcy proceeding, and the Miller Act cause of action is separate from the breach of contract action that was adjudicated in JAG's bankruptcy. See In re JAG Constr. Servs., Inc., 2013 WL 3760113, *2 (Bkrtcy. W.D. La. 7/16/2013). A subcontractor can pursue a Miller Act claim for payment on the bond against the surety without joining the contractor as a defendant. See Hudson, 374 F.2d at 945; Nucon Constr., 49 F.3d at 1423. Therefore, J&B was not required to join its Miller Act claim against Western Surety and LDI as an adversary proceeding in JAG's bankruptcy, and claim preclusion is inapplicable.

### b. Louisiana Suretyship Law

Western Surety and LDI also argue that, under Louisiana suretyship law, JAG's partial payment of J&B's claim extinguishes J&B's Miller Act claim against them. Louisiana Civil Code article 3062 states that "[t]he extinction of the principal obligation extinguishes the suretyship." Western Surety and LDI argue that this Article means that their obligation was ancillary to JAG's and was extinguished when JAG's obligation was extinguished by partial payment.

As stated above, state-law suretyship principles that conflict with the terms and purpose of the Miller Act are inapplicable. Walton Tech., 290 F.3d at 1206. The Miller Act allows a subcontractor to bring an action for any amount unpaid. 40 U.S.C. § 3133(b). The purpose of the Miller Act is protect subcontractors who work on federal projects because state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable. Arena, 669 F.3d at 220. Thus, Louisiana Civil Code article 3026 conflicts with the terms and purpose of

the Miller Act and cannot operate to extinguish J&B's Miller Act claim against LDI and Western Surety.

### 2. J&B's Arguments

J&B contends that it is entitled to summary judgment on its Miller Act claim because it has satisfied all of the element of that claim.[1] It argues that the bankruptcy court's judgment establishes that it had a contract with JAG to supply the tugboat services in prosecution of the work provided for in LDI's contract with the government, and that J&B had a good faith belief that the services were intended for the specified work. J&B also argues that the bankruptcy court's judgment establishes how much it was owed for its work, and that JAG's partial payment within the confines of the bankruptcy proceedings demonstrates that J&B was not paid for the work. Thus, J&B argues that the bankruptcy court's judgment conclusively determines that amount that it is owed from Western Surety on the payment bond under the Miller Act. Essentially, J&B argues that the bankruptcy court's judgment on its breach of contract claim against JAG collaterally estops LDI and Western Surety from litigating the existence of the contract and the amount owed to J&B thereunder in this action on J&B's Miller Act claim against LDI and Western Surety.

Collateral Estoppel or "issue preclusion" is a type of res judicata that "recognizes that suits addressed to particular claims may present issues relevant to suits on other claims." Kaspar Wire Works, Inc. v. Leco Eng'g an Mach., Inc., 575 F.2d 530, 535 (5th Cir. 1978). It bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 128 S.Ct. at 2171 (quoting New Hampshire, 121 S.Ct at 1814). Collateral estoppel is intended to

---

[1] There is no dispute that J&B meet the jurisdictional requisites of timely notice and filing.

protect parties from multiple lawsuits, to avoid the possibility of inconsistent decisions, and to conserve judicial resources. Lytel v. Household Mfg., Inc., 110 S.Ct. 1331, 1337 (1990) (citing Montana v. United States, 99 S.Ct. 970, 973-74 (1979)). To establish collateral estoppel, a party must show "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 353 (5th Cir. 2009) (citing Wehling v. CBS, 721 F.2d 506, 508 (5th Cir. 1983)). "The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." Id. (citing Wehling, 721 F.2d at 508.

Collateral estoppel does not apply here because LDI and Western Surety did not have the opportunity to litigate any issues in the context of JAG's bankruptcy proceeding. J&B's Miller Act claim against LDI and Western Surety depends on the existence and particularities of its contract with JAG. United States ex rel Woodington Elec. Co. v. United Pac. Ins. Co., 545 F.2d 1381, 1383 (4th Cir. 1976). ("Whether a subcontractor has been paid in full for providing labor and materials must be determined by reference to the underlying subcontract as it relates to the scope of the work and the payment terms."). LDI and Western Surety must be given the opportunity to litigate these issues in the Miller Act claim. While J&B is entitled to pursue its Miller Act, 40 U.S.C. § 3131, et seq., claim against Larry Doiron, Inc. and Western Surety Company in this action, the holding of the bankruptcy court in In re JAG Constr. Servs., Inc., 2013 WL 3760113 (Bkrtcy. W.D. La. 7/16/2013), does not have collateral estoppel effect on this action. Thus, J&B's motion for summary judgment is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that J&B Boat Rental, LLC's Motion for Summary Judgment (Doc. #32) is **DENIED**.

**IT IS FURTHER ORDERED** that Larry Doiron, Inc. and Western Surety Company's Moiton for Summary Judgment (Doc. #33) is **DENIED**.

New Orleans, Louisiana, this __15__ day of May, 2015.

                                      **MARY ANN VIAL LEMMON**
                                      **UNITED STATES DISTRICT JUDGE**